UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARCUS D. HUGHES,

               Plaintiff,

v.                                        Case No. 1:11-cv-66
                                        Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on March 13, 1974 (AR 153).[1] Plaintiff alleged a disability onset date of December 16, 2006 (AR 153). He completed the 12th grade, had three years of machine training in high school, and had previous employment as a laborer, dishwasher, machinist and computer numeric control (CNC) operator (AR 25, 36-39, 158, 162). Plaintiff identified his disabling condition as a brain injury suffered during an assault in December 2006 (AR 40, 158). Administrative Law Judge (ALJ) Reamon reviewed plaintiff's claim *de novo* and entered a decision denying benefits on September 16, 2009 (AR 18-27). On November 17, 2010, the Appeals Council denied plaintiff's request for review of ALJ Reamon's decision (AR 1). Plaintiff filed this appeal of ALJ Reamon's decision on January 19, 2011. Compl. (docket no. 1).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

On February 3, 2010, while ALJ Reamon's decision was pending before the Appeals Council, plaintiff filed additional claims for DIB and SSI, which resulted in an administrative hearing before ALJ Silva. *See* Notice of Hearing (docket no. 15-1 at p. ID# 1187). After defendant filed an answer and the administrative transcript in the present action, plaintiff moved to stay this action while he pursued an administrative hearing before ALJ Silva. Motions to stay (docket nos. 13 and 15). The present action was stayed on October 3, 2011. Order (docket no. 16). During the stay, plaintiff's counsel withdrew. *See* Order (docket no. 18). Plaintiff's new counsel moved to lift the stay, advising the Court that the ALJ Silva entered issued an unfavorable decision on November 23, 2011, that the Silva decision was pending with the Appeals Council, and that the present appeal was not rendered moot by plaintiff's more recent applications for benefits. *See* Motion to lift stay (docket no. 21). This action was re-opened on May 30, 2013 and is now before the Court for review of ALJ Reamon's September 16, 2009 decision. Order (docket no. 22).

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.

### A.   Steps 1, 2 and 3

At the first step, ALJ Reamon found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 16, 2006 and that he met the insured status requirements under the Act through September 16, 2009 (the date of the decision) (AR 20, 27). At the second step, the ALJ found that plaintiff had severe impairments of:  mild traumatic brain injury; left shoulder bicep tendonitis; post left shoulder arthroscopy; mood disorder; personality disorder; and he had a history of drug and alcohol addiction (AR 20). At the third step, the ALJ found that

4

plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21).

### B.    Step 4

ALJ Reamon found at the fourth step:

> [T]hat the claimant has the residual functional capacity to sit at least six hours, stand/walk at least six hours with normal breaks, lift and carry 50 pounds occasionally and 20 pounds frequently.  He can look up occasionally, and hold head in static position frequently.  He can stoop and climb ladders occasionally and twist, crouch, and climb stairs frequently.  The claimant has the ability to understand, remember, and carry out simple, routine tasks; maintain attention and concentration for two hour blocks accommodated by normal breaks and lunch in a low stress, structured work setting with occasional interaction with the general public and supervisors and no close critical supervision (20 CFR 404.1567(b) and 416.967(b)).

(AR 22).

It is not entirely clear from the ALJ Reamon's RFC determination as to whether plaintiff had the exertional capacity to perform medium work or light work.  The ALJ found that plaintiff could lift 50 pounds occasionally, which is consistent with medium work (AR 22). *See* 20 C.F.R. §§ 404.1567(c) and 416.967(c) (" Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.").  However, the ALJ concluded the RFC determination by citing the regulation for light work (rather than medium work) (AR 22).  *See* 20 C.F.R. §§ 404.1567(b) and 416.967 (b)) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").  Based on this RFC, the ALJ found that plaintiff was unable to perform his past relevant work as a CNC, because that position involved "heavy work" (AR 25).  *See* 20 C.F.R. §§

5

404.1567(d) and 416.967(d) ("Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds").

C.    Step 5

At the fifth step, the ALJ posed a hypothetical question to the VE which assumed that the claimant could perform a limited range of *light* work with additional limitations that were not included in the RFC determination:

> Limited to light work only.  They indicate that he should only occasionally push or pull with the left upper extremity, no limits on the right side.  They indicate he should never ladder, rope, or scaffold climb.  He should only occasionally climb ramps and stairs.  He should only occasionally balance and only occasionally crawl.  His stooping, kneeling, and crouching would be allowed at frequent levels.  He would be kept from reaching with the left shoulder above the waist.  And he would be limited to occasional handling with the left upper extremity.  They don't limit him on the right side.  As far as environmental limits go, he is limited to avoidance of concentrated exposure with vibration.  And it also said that he should avoid all hazards such as machinery and unprotected heights.  There are some additional limitations, both from the mental RFC done at 14F [AR 690-93] -- and I want to ask you to assume that the limits there would essentially limit him to no more than simple routine tasks.  Would limit his attention and concentration span to no more than two hours in an eight-hour day, accommodated by normal breaks and lunch.  In other words, two-hour blocks of time.  He would be essentially limited to only occasional interaction with the general public, and occasional supervisor interaction.  No close critical supervision.  Probably would be best served in a structured work environment.  If you were to lump together the limits that I just read to you and apply them to Mr. Hughes or a Claimant of his age, education, and work experience.  .  .

(AR 60) (emphasis added).

Based on these restrictions, the VE testified that plaintiff could not perform his past relevant work, which was heavy and skilled (AR 60-61).  In addition, the VE testified that the hypothetical person could perform light work as: general cashier (15,000 jobs); interviewer "other than eligibility and loan" (3,000 jobs); and counter clerk (2,000 jobs) (AR 61).  Plaintiff could also

perform some types of work in a factory setting, including inspector (2,000 jobs) and production or assembly (4,000 jobs) (AR 61).

After the hearing, the ALJ apparently reconsidered his position and obtained additional vocational evidence in the form of interrogatories to the VE dated August 6, 2009 (AR 265-69). The interrogatories sent to the VE included different limitations than those set forth in the ALJ's decision. While the ALJ's RFC determination appeared based upon plaintiff's ability to perform light work, the hypothetical question posed to the VE in the interrogatories was based upon plaintiff's ability to perform medium work:

> Assume a hypothetical individual who was born on March 13, 1974, has at least a high school education and is able to communicate in English as defined in 20 CFR 404.1564 and 416.964, and has work experience as described in paragraph #6. Assume further that this individual has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he can sit/stand/walk (each activity) for more than 2 hours at one time for a total of at least 6 hours in an 8 hour workday with normal breaks; can occasionally lift/carry up to 50 pounds and frequently up to 20 pounds; can frequently hold his head in a static position and occasionally hold his head forward with the neck in a flexed posture, occasionally turn his head to the right and left and occasionally look up with neck extended; can frequently twist, crouch, squat and climb stairs and occasionally stoop, bend and climb ladders. From a mental perspective, please assume the ability to understand, remember and carry out simple routine tasks; also the capacity to maintain attention and concentration for 2 hour blocks accommodated by normal breaks and lunch in a low stress, structured work setting with occasional interaction with the general public and supervisors and no close critical supevision [sic].

(AR 266-67) ("Item No. 7").

In Interrogatory no. 10, the ALJ asked if the individual described in Item No. 7 could "perform any unskilled occupations with jobs that exist in the national economy" (AR 268). In response, the VE identified 34,400 jobs: machine operator (14,000 medium, unskilled jobs such as automatic grinder operator (603.685-058)); assembler (14,000 medium, unskilled jobs such as drawstring knotter (689.685-058)); and inspector (6,400 medium, unskilled jobs such as buffing

7

wheel inspector (789.687-026)), indicating that the jobs were located in the region of Michigan (AR 268).

In a letter dated September 3, 2009, the ALJ advised plaintiff's counsel that he had obtained this additional evidence, proposed to enter it into the record, and invited counsel to submit a response or request a supplemental hearing concerning this new evidence (AR 275-76).  The ALJ further advised plaintiff's counsel that if he did not receive a response "within 10 days of the date you receive this notice,"  then he would enter the additional evidence in the record and issue a decision (AR 276).  There is no evidence in the administrative record that plaintiff's counsel responded to the ALJ's proffer.

In his decision entered on September 16, 2009, the ALJ found that plaintiff could perform the unskilled medium work identified by the VE in the post-hearing interrogatories:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the regional economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as machine operator (14,000 medium, unskilled jobs such as automatic grinder operator (603.685-058)); assembler (14,000 medium, unskilled jobs such as drawstring knotter (689.685-058)); and inspector (6,400 medium, unskilled jobs such as buffing wheel inspector (789.687-026)).

(AR 26).[2]  Based on the VE's responses in the interrogatories, the ALJ found that plaintiff was capable of making a successful adjustment to other work that exists in the national economy and that plaintiff was not under a disability, as defined in the Social Security Act, from December 16, 2006 (the alleged onset date) through September 16, 2009 (the date of the decision) (AR 26-27).

### III.  ANALYSIS

Plaintiff's brief did not include a Statement of Errors as directed by the Court.  *See* Notice (docket no. 10).  Nevertheless, the Court gleans two issues raised in his brief.

**A.    The Commissioner erred at Step Three by failing to properly evaluate the opinion evidence and assessing a mental RFC that is not supported by substantial evidence.**

**1.    Dr. Sajja**

Plaintiff contends that the ALJ failed to properly evaluate the opinion of his treating physician, S. Prassad Sajja, M.D.   A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time

---

[2] As discussed, ALJ Reamon's RFC determination, while setting forth lifting limits consistent with medium work, cited the regulation defining light work (i.e., 20 C.F.R. §§ 404.1567(b) and 416.967 (b)).  In addition, at Step 5 the ALJ referred to plaintiff as subject to Medical Vocational Rule 202.20 (which is based upon a maximum sustained work capacity limited to light work).  The ALJ's citation to the definition for light work and the Rule 202.20 appear inconsistent with the determination that plaintiff could perform the medium work jobs identified by the VE.  However, plaintiff did not raise this issue in either the administrative appeal or this federal court action.  Accordingly, the Court will not address this apparent inconsistency in the record. *See Maloney v. Commissioner of Social Security*, 480 Fed. Appx. 804, 810 (6th Cir. 2012) (in reviewing a Social Security Appeal, "[i]t is axiomatic that a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal") (internal quotation marks omitted).

will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Sajja's treatment notes are found in Exhibit 20F (Medical Records from Riverwood Center) (AR 813-42). The ALJ addressed Dr. Sajja's opinions as follows:

> The medical evidence is somewhat inconsistent in this case. Dr. Sajja's office notes indicate claimant's behavior has been influenced by delusions or hallucinations or serious impairment in communication or judgment, as indicated by assigning claimant a Global Assessment of Functioning (GAF) score of 30 (Ex

20F/2).  However, the undersigned notes that during the same office visit, the claimant admitted that he had been doubling up on his medication. (Notably, while the claimant was at the Origami Center he was aware of taking medications appropriately (Ex 6F)).  Dr. Sajja described the claimant as alert, oriented, and about the same as he usually is.  He was observed sitting in the waiting room comfortably, talking on his telephone, and appeared upbeat, jovial with friends, and not at all like a person functioning with a GAF of 30 would be expected to act.  Dr. Sajja also noted that during appointments claimant was restless and fidgety.  Dr. Sajja admits to having an impression that claimant is not being completely candid with him.

"He denies any drug abuse, however I doubt that" was Dr. Sajja's entry in his report of February 5, 2009 (Ex 20F/2).  Given the claimant's statements and the record as a whole, Dr. Sajja's assigned GAF score of 30 is shown to be markedly inconsistent with his observations of claimant (Ex 20F).  Therefore, the assigned GAF of 30 is given no weight.

Exhibit 24F is a psychological assessment [prepared by a therapist].  The undersigned notes that on page 2 there are two references to Dr. Sajja's notes and opinions.  Claimant was assigned a GAF of 30.  Clearly, this report is a mere reflection of Dr. Sajja's opinions in Exhibit 20F and is given little weight.

(AR 24-25).

Plaintiff contends that the ALJ failed to give good reasons for rejecting Dr. Sajja's medical opinion assigning plaintiff a GAF score of 30.[3]  This GAF score lies within the 21 to 30 range, which indicates "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. *DSM-IV-TR* at pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.*  At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

bed all day; no job, home, or friends)."  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000) at  p. 34.

As discussed, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson*, 378 F.3d at 545.  However,  "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."  *Id.* at 546-47.  As the party attacking the agency's determination, plaintiff has the burden of establishing that the error was harmful.  *See Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).  Here, plaintiff has not met that burden because the error was not harmful.

Plaintiff bases his disability claim on the GAF score of 30 assigned by Dr. Sajja.  The thrust of the ALJ's decision is that plaintiff's behavior is not consistent with the low GAF score assigned by the doctor.  The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Social Security*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996).   A GAF score "may have little or no bearing on the subject's social and occupational functioning."  *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006).  In addition, "[t]he GAF scale  .  .  .  does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000).   As the Sixth  Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning.  A GAF score may help an ALJ assess mental RFC, but it is not raw

12

> medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 927 (6th Cir.1987) (citation omitted). Because the GAF score is not raw data and may have little or no bearing on plaintiff's social and occupational functioning for purposes of determining disability under the Act, the ALJ's alleged error in evaluating Dr. Sajja's assignment of a GAF score was harmless and did not prejudice plaintiff.

### 2. Ms. Macharaschwili

Plaintiff also contends that the ALJ failed to properly evaluate the opinion of his therapist, Tamara Macharaschwili. The ALJ's decision also referred to the psychological assessment (mental RFC questionnaire) completed by plaintiff's therapist, Ms. Macharaschwili, and designated as Exhibit 24F (AR 25, 966-70). Plaintiff contends that the ALJ failed to properly evaluate Ms. Macharaschwili's opinion, noting that the ALJ "never articulated a reason for conferring Ms. Macharaschwili's opinion any weight." Plaintiff's Brief at p. 21. Plaintiff's contention is without merit. Ms. Macharaschwili is not an acceptable medical source under the regulations. *See* 20 C.F.R. §§ 404.913(a) and 416.1513(a) ("[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment[]"; such sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). *See, e.g. Perry ex rel. G.D. v.*

13

*Commissioner of Social Security*, 501 Fed. Appx. 425, 427 (6th Cir. 2012) (the opinion of a special education teacher cannot establish the elements of a listed impairment because such an individual is not an acceptable medical source under 20 C.F.R. § 416.913(a)); *Perschka v. Commissioner of Social Security*, 411 Fed. Appx. 781, 787 (6th Cir. 2010) (physical therapist could not provide evidence to establish a listed impairment because a therapist is not an acceptable medical source under 20 C.F.R. § 404.1513(a)(1)-(5)).

   The requirement that the Commissioner give "good reasons" for the weight given to an opinion applies only to "treating sources" (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation). *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007) ("[b]efore determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a 'treating source'"); *Burke ex rel. A.R.B. v. Astrue*, No. 6:07-cv-376, 2008 WL 1771923 at *7 (E.D. Ky. April 17, 2008) ("the deferential reason-giving requirements for the rejection of a treating-source opinion necessarily do not apply where the source in question is not an 'acceptable medical source'"). The Sixth Circuit has "previously held that an ALJ has discretion to determine the proper weight to accord opinions from 'other sources[.]'" *Engebrecht v. Commissioner of Social Security*, 572 Fed. Appx. 392, 398 (6th Cir. 2014), quoting *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 541 (6th Cir. 2007). "Although the opinions of 'other sources' cannot establish the existence of a disability, their perspective should be given weight by the adjudicator and should be 'evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.'" *Engebrecht*, 572 Fed. Appx. at 398, quoting *Cruse*, 502 F.3d at 541 and SSR 06–03p. Because Ms. Maraschwili is not an acceptable medical source, ALJ

Reamon was neither required to give her opinions "complete deference" nor required to meet the "good reason" requirement of § 416.927(d)(2).  *See Smith*, 482 F.3d at 876; *Burke ex rel. A.R.B.*, 2008 WL 1771923at *7.  Here, the ALJ considered Maraschwili's opinion and gave it little weight because it was based merely on Dr. Sajja's notes and opinions.  Accordingly, plaintiff's claim of error will be denied.

> **B.      The Commissioner failed to offer sufficient time
> for the claimant to respond to VE interrogatories
> and deprived him of a full and fair hearing.**

As discussed, ALJ Reamon relied on vocational evidence provided in the VE's post-hearing interrogatory responses.  The ALJ sent the VE's responses to plaintiff's counsel on September 3, 2009, as part of a "proffer letter" under Hallex I-2-7-30,[4] which provided in pertinent part:

> You may submit any or all of the following: written comments concerning the enclosed evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider (including a report from the treating physician).  You may also submit written questions to be sent to the author(s) of the enclosed report(s).

> You may also request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements concerning the facts and law.  If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision.  In addition, you may request an opportunity to question witnesses, including the author(s) of the enclosed report(s).  I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues.  If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.

---

[4] The Social Security's Hearings, Appeals, and Litigation manual ("HALLEX") refers to the Social Security Administration's procedural manual, which sets forth safeguards and procedures for the agency's administrative proceedings.  *See Robinson v. Barnhart*, 124 Fed. Appx. 405, 410 (6th Cir. 2005).  The text of HALLEX I-2-7-30 is available at http://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html.

You may request that I issue a subpoena to require the attendance of witnesses or the submission of records. You must submit a subpoena request, in writing, no later than 5 days before the date of any supplemental hearing. Any request that I issue a subpoena must provide the names of the witnesses or documents to be provided; the address or location of the witnesses or documents with sufficient detail to find them; a statement of the important facts that the witness or document is expected to prove; and the reason why these facts cannot be proven without issuing a subpoena. I will issue a subpoena if reasonably necessary for the full presentation of the case.

(AR 275).

The ALJ placed a 10-day deadline for plaintiff's response to the proffer:

**Actions I Will Take If I Do Not Hear From You**

If I do not receive a response from you within 10 days of the date you receive this notice, I will assume that you do not wish to submit any written statements or records and that you do not wish to request a supplemental hearing or to orally question the author(s) of the enclosed report(s). I will then enter the enclosed evidence in the record and issue my decision.

(AR 276).

Under the method employed by the ALJ, the due date for plaintiff's response was calculated by the date when plaintiff received the proffer, as opposed to the date when the ALJ sent it. By using this method, the ALJ agreed to hold the record open for ten days after plaintiff received the proffer. It is unclear from the record as to how the ALJ calculated the due date for plaintiff's response.[5] The administrative record does not contain any response from plaintiff addressing the ALJ's proffer. On September 16, 2009 (13 days after the date of the proffer), the ALJ issued an

---

[5] The Court notes that one regulation provides a presumptive receipt date in calculating the 60-day time period in which to file a court action. *See* 20 C.F.R. § 422.210(c) ("the date of receipt of notice of denial of request for review of the presiding officer's decision or notice of the decision by the Appeals Council shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary"). However, HALLEX I-2-7-30 does not include such a presumption. In addition, § 422.210 does not indicate that the 5-day presumption of receipt used in calculating the timeliness of a court action applies to each deadline under the Social Security regulations.

unfavorable decision which relied on the VE's interrogatory answers (AR 18-27).  In the decision,

the ALJ stated that he sent plaintiff a letter regarding the interrogatories in compliance with Hallex

I-2-7-30 (AR 18).

Now, plaintiff contends that his counsel sent a timely response to the ALJ's letter

contesting the interrogatory answers.  In support of his claim, plaintiff's brief includes a copy of the

ALJ's letter with a "received" stamp of September 9, 2009 (docket no. 19-1) and a copy of a letter

to the ALJ from plaintiff's former counsel, Carl Mishler, dated September 17, 2009 (docket no. 19-

2) (one day after the ALJ's decision),which provided the following response:

> I would like to object to the interrogatories you submitted to Vocational Expert David Holwerda on 8/6/09.  These interrogatories did not take into consideration the serious nature of Marcus's traumatic brain injury and chronic headaches.  I have recently submitted medical records which indicate the presence of a brain lesion, and a diagnosis of traumatic headaches.  These conditions prevent him from maintaining his concentration for two hours, and would require him to have unscheduled workbreaks during the workday.

> These interrogatories were not provided to me to review before they were submitted to the Vocational Expert.  I ask that they be given little weight in your decision.

Mishler Letter (Sept. 17, 2009).  However, Mr. Mishler's correspondence does not appear in the

administrative record.  In fact, there is no evidence in the administrative record as to when plaintiff's

former counsel (Mr. Mishler) received the proffer, when Mishler sent the letter to the ALJ, whether

Mishler mailed or faxed the letter, or if the ALJ ever received the letter.[6]

Mr. Mishler sought review of the ALJ's September 16, 2009 decision, faxing a

request for review to the Appeals Council on November 16, 2009 (AR 11-14).  Plaintiff's request

---

[6] The Court notes that plaintiff did not present any evidence from Mr. Mishler (such as an affidavit) to establish that this letter was sent to ALJ Reamon or to support plaintiff's claim that Mishler's letter was a timely response to the proffer.

for review identified three exceptions to the ALJ's decision: "(1) Improper adjudication; (2) Failure to properly recognize pain from both a mental and physical standpoint; (3) Failure to recognize applicable law" (AR 12). None of the exceptions refer to the September 17, 2009 objections. It appears that the request for review was closed without Appeals Council action, because Mr. Mishler faxed a request to the agency on May 10, 2010, asking to re-open the request for review (AR 10). After the request for review was re-opened, Mr. Mishler sent a supporting brief to the Appeals Council which devoted two sentences to the VE's interrogatories (AR 117). The brief referred to an "objection" filed to the ALJ's proffer on an unspecified date:

> On the decision, the ALJ commented that I never responded to the supplemental interrogatories that were submitted to the Vocational Expert. An objection was in fact filed within 10 days of September 9, 2009, the day it was received, and is included along with this request with the accompanying ERE confirmation letter.

Plaintiff's Counsel's Brief (June 4, 2010) (AR 117). The Appeals Council denied plaintiff's request for review on November 17, 2010 (AR 1). In reaching its decision, the Appeals Council's Exhibit List related to the request for review included plaintiff's June 4, 2010 brief, as well as additional medical records designated as Exhibits 31F, 32F, 33F, 34F and 35F (AR 4, 1020-1123). However, plaintiff's objection (i.e., the September 17, 2009 letter) is absent from this list (AR 4). Therefore, the Appeals Council did not have the evidence in support of plaintiff's claims.

Now, plaintiff claims that ALJ Reamon violated his due process rights claim because the ALJ issued a decision without reviewing the objections to the ALJ's proffer contained in Mr. Mishler's September 17, 2009 letter. However, as discussed, this letter is not part of the administrative record. The Court cannot consider the September 17, 2009 letter because it is new evidence which was not presented to the ALJ. *See Elliott v. Apfel*, 28 Fed.Appx. 420, 423(6th Cir.

2002) ("[i]f the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ").  Accordingly, plaintiff has failed to present evidence in the administrative record to support his due process claim.

When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988).  Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."  42 U.S.C. § 405(g).  In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*  "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).  Here, while plaintiff's objection to the ALJ's proffer was material, he has not shown good cause for failing to incorporate this evidence into the record.

Plaintiff is not entitled to a sentence-six remand.  Accordingly, plaintiff's claim of error is denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  The Commissioner's will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  July 6, 2015                              /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge